IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FORAGE GENETICS INTERNATIONAL, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 2:18-CV-113-Z-BR |
| WARNER SEEDS, INC., | § § § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Forage Genetics International, LLC's ("Forage") Motion for Summary Judgment and brief in support. (ECF 29–30). Forage seeks summary judgment against Defendant Warner Seeds, Inc. ("Warner") for: (1) recovery of the purchase price of seed Forage sold to Warner under sections 2.607 and 2.709 of the Uniform Commercial Code ("UCC"); and (2) breach of contract. (*See* ECF 29). The undersigned recommends Plaintiff's Motion for Summary Judgment be GRANTED in part and DENIED in part.

I.     **FACTUAL BACKGROUND**[1]

The Court briefly summarizes the facts relevant to the disposition of Forage's motion at the outset and discusses the facts in greater detail in its analysis. Forage produces and sells alfalfa seed. (Forage App., 1). Warner sells alfalfa seed and formerly bought seed from Forage to resell to Warner's customers. (*Id*. at 2, 6). It is undisputed that on July 10, 2012, the parties signed a Credit Application and Agreement ("Credit Agreement"). (*Id*. at 33–35). Under the

---

[1] ECF 31 is Forage's appendix in support of its Motion for Summary Judgment and will be cited as "Forage App." Citations will refer to the numbering assigned by Forage. ECF 34 and 42 form Warner's appendix in support of its response to the Motion for Summary Judgment and will be cited as "Warner App." Citations will refer to the numbering assigned by Warner. All other citations will refer to the numbering assigned by the Court.

Credit Agreement, Warner agreed to timely pay invoices Forage issued. (*Id*. at 33). The Credit Agreement states past-due invoices will incur late charges. (*Id*.).

Warner does not dispute the existence of the Credit Agreement. (ECF 33 at 11). However, Warner claims that an "oral warehouse agreement" ("Warehouse Agreement"), explained in greater detail later in the Court's analysis, governed the parties' relationship. (*Id*. at 10). Warner claims that under the alleged Warehouse Agreement, "Warner did not get billed for the seed until it was actually moved [from Warner's warehouse] to a customer and Warner did not own the seed until then either." (*Id*. at 17). Warner's brief does not make clear whether the parties formed the alleged Warehouse Agreement before or after the Credit Agreement was signed on July 10, 2012. (*See* Forage App., 39).

The parties dispute whether Warner must pay the outstanding balance of six invoices from Forage for alfalfa seed, and if so, the amount due under the invoices and the amount of late charges. Of the 455 bags of seed referenced in the six invoices, only 290 are it issue. Warner disputes its liability only as to 115 of the 290 bags. Forage seeks summary judgment on its claims to recover the unpaid balance of the six invoices. (*See* ECF 29). Specifically, Forage seeks summary judgment on: (1) its claims under the UCC for recovery of the unpaid purchase price of the seed, and (2) its breach of contract claim for late charges under the Credit Agreement. (*Id*.).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248. To determine whether there are any genuine issues of material fact, the Court must first ascertain the factual issues that are material under the applicable substantive law. *See id*.; *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076, n.14 (5th Cir. 1994). Next, the Court must review the evidence on those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986) (internal quotation omitted)); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992). The Court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (internal citation omitted). If "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure

all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d at 1194. The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007).

### III.  ANALYSIS

#### A. Choice-of-law

Forage seeks summary judgment on: (1) its claims under the UCC for recovery of the unpaid purchase price of the seed, and (2) its breach of contract claim for late charges under the Credit Agreement. (*See* ECF 29). Forage notes in its motion that the Credit Agreement contains a Minnesota choice-of-law provision. However, the Court notes that Forage's briefing relies mostly on Texas law. Forage provides no briefing regarding which law—Minnesota or Texas—applies and addresses the issue only briefly in a footnote. (ECF 30 at 26). Though Warner claims the parties did not conduct business pursuant to the Credit Agreement's terms, it does not dispute that the parties signed the Credit Agreement and, like Forage, does not address the Minnesota choice-of-law provision. (*See* ECF 33 at 11). Additionally, Warner cites only Texas authority in support of its arguments. Despite the parties' lack of case law, the Court must still engage in the straightforward choice-of-law analysis in order to determine what law applies to Forage's claims.

A federal court sitting in diversity applies the choice-of-law rules of the forum to determine the applicable law. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003). Thus, Texas choice of law rules apply. "Texas law gives effect to choice of law clauses regarding construction of a contract." *Benchmark*, 343 F.3d at 726; *see Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1142 (5th Cir. 1992). A contract's choice-of-law provision dictates the law applicable to all "claims relating to the [contract]." *See Tel-Phonic*, 975 F.2d at 1142. The Credit

Agreement states "[t]he laws of the State of Minnesota will govern this Agreement." (Forage App., 39). Thus, Minnesota law applies to Forage's claims.

### B. Forage's Claims Under Sections 2.607 and 2.709 of the UCC

Forage seeks summary judgment on its claims against Warner under the UCC for recovery of the unpaid amount of the seeds' purchase price, as detailed in the six disputed invoices. (*See* ECF 29). Forage must establish all essential elements of its claim to warrant summary judgment in its favor. *See Fontenot*, 780 F.2d at 1194.

Article 2 of the UCC applies to all transactions for the sale of goods. Minn. Stat. § 336.2–102. A sale is "the passing of title from the seller to the buyer for a price[.]" *Id*. § 336.2–106(1). "Goods" are all things movable at the time of their identification for sale. *Id*. § 336.2–105(1). The Court finds, and it is undisputed by the parties that, alfalfa seed constitutes a "good" because it is a thing that is movable at the time of identification for sale. Thus, the UCC, not Minnesota common law, applies to Forage's claim for the unpaid balance of the invoices. *See Rector v. Karlstad Farmers Elevator*, No. A07-0693, 2008 WL 3287910, at *2–3 (Minn. Ct. App. Aug. 12, 2008) ("[T]he district court should not have submitted to the jury the breach-of-contract claim…because the U.C.C. controls and provides the exclusive breach-of-warranty remedy here.") (citing *Hapka v. Paquin Farms*, 458 N.W.2d 683, 688 (Minn. 1990) (holding that Article 2 of the U.C.C. preempts common law claims)).

Under Article 2, "[w]hen the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages" the price of the accepted goods. Minn. Stat. § 336.2-709(1). "Buyer" means a person who buys or contracts to buy goods. *Id*. § 336.2-103(1)(a). "Acceptance of goods results when the buyer (1) after inspection signifies that the goods conform to the contract or that the buyer will retain the goods notwithstanding nonconformity, (2) fails to

make an effective rejection after a reasonable opportunity to inspect the goods, or (3) acts inconsistently with the seller's ownership." *Datalink Corp. v. Perkins Eastman Architects*, P.C., No. 13-CV-2978SRN, 2015 WL 3607784, at *7 (D. Minn. June 8, 2015) (citing Minn. Stat. § 336.2–606(1)).

The parties dispute whether Warner was a "buyer" under the UCC or merely served as a warehouse for some of Forage's inventory. (*See* ECF 33 at 19). However, when setting forth its argument, Warner only challenges whether it was a "buyer" as to 115 of the bags of seed. (*See id*. at 8, 19) (stating a fact issue exists regarding whether Warner was a "buyer" only with respect to 115 bags of seed). Additionally, Warner's briefing requests the Court deny summary judgment "on the damaged and stolen seed (115 bags)" only. (*Id*. at 5). As explained above, there are 290 bags of alfalfa seed at issue in the six invoices issued by Forage to Warner. Based on Warner's response, the Court determines Warner does not dispute it was a "buyer" of 175 bags under the UCC. The Court addresses the undisputed and disputed seed and invoices separately.

      *i.*    ***Undisputed Alfalfa Seeds***

Warner does not respond to Forage's motion for summary judgment for the purchase price of the following seed under section 336.2-709(1) of the UCC:

- 70 bags of seed from Invoice No. 61808354 (Warner App., 76, 124–25);
- 40 bags of seed from Invoice No. 62013237 (*Id*. at 133, 146);
- 25 bags of seed from Invoice No. 62036324 (*Id*. at 139, 146); and
- 40 bags of seed from Invoice No. 62036322/Lot No. SR388-17CG (*Id*. at 140, 146).

(*See* ECF 33 at 6, 8–9).[2] Warner's response brief clearly states it "sold 175 bags of seed" it accepted from Forage and identifies the bags. (*Id*. at 6).

---

[2] Based on the undisputed evidence, the Court finds Warner returned the following seed to Forage and received a credit to its account:

6

When the nonmoving party fails to respond to a motion for summary judgment, courts may not enter a default summary judgment based solely on the nonmovant's failure to respond. *See Alvarez v. United Parcel Serv. Co.,* 398 F. Supp. 2d 543, 548–49 (N.D. Tex. 2005). In such a situation, the moving party must still carry its initial burden of demonstrating there is no genuine issue as to any material fact. *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 708 (5th Cir. 1985). If the moving party fails to satisfy its burden, summary judgment must be denied, even absent a response from the nonmoving party. *Id*. However, a court may accept the moving party's version of the facts as undisputed. *Alvarez*, 398 F. Supp. 2d at 548–49.

The undisputed evidence shows Forage delivered the seed to Warner for sale, Warner accepted the seed, and the price of the seed has come due. (Warner App., 76, 124–25, 133, 139, 140, 146). The evidence further shows the unpaid purchase price of the seed is $40,230.[3] The Court finds that the parties' conduct is sufficient to establish a contract for sale. Though Forage does not articulate the exact form and terms of the contract for this seed, the parties seem to agree there was a contract for the sale of the seed and that the quantity and price of the seed are accurately stated in the invoices above. Thus, at the very least, Forage has met its summary judgment burden to show a contract for the sale of the 175 bags of undisputed seed was formed through the parties' conduct. *See* Minn. Stat. § 2-207(3) ("Conduct by both parties which recognizes the existence of

---

•164 bags of seed from Invoice No. 62036322/Lot No. R145-17CGS (Warner App., 144); and
•1 bag of seed from Invoice No. 61877013 (*Id*. at 129).

Warner received a credit of $65,200 for the 164 returned bags from Invoice No. 62036322/Lot No. R145-17CGS. (*Id*. at 144). Warner received a credit of $335 for the 1 bag returned from Invoice No. 61877013. (*Id*. at 129). Therefore, these 165 bags are not at issue.

[3] Invoice No. 61808354's unpaid balance – $11,180 (*See* Warner App., 109, 124)
  Invoice No. 62013237's unpaid balance – $7,600 (*Id*. at 133)
  Invoice No. 62036324's unpaid balance – $8,250 (*Id*. at 139)
  Invoice No. 62036322's unpaid balance – $13,200 (*Id*. at 140) (with respect to 40 bags undisputed)
    Total unpaid balance                 – $40,230

a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract."); *see White Consol. Indus., Inc. v. McGill Mfg. Co.*, 165 F.3d 1185, 1191 (8th Cir. 1999) (finding contract existed pursuant to section 2-207(3)). There is no genuine issue of material fact with respect to Warner's liability for the undisputed seed. Thus, Forage is entitled to summary judgment on its claims under the UCC with respect to the undisputed seed.

### ii. Disputed Alfalfa Seeds

The undisputed evidence shows Forage delivered to Warner's warehouse and subsequently invoiced Warner for the following seed:

- 69 bags of seed from Invoice No. 61877013 (Warner App., 126);
- 40 bags of seed from Invoice No. 61919388 (*Id.* at 130); and
- 6 bags of seed from Invoice No. 62036322/Lot No. R145-17CGS (*Id.* at 140, 146).

Forage argues it is entitled to the unpaid amount of the above invoices under the UCC because Warner accepted and did not reject the seed. (ECF 30 at 24–25). Warner does not dispute that it accepted delivery of and was invoiced for the seed. (*See* ECF 33 at 8). Instead, Warner argues it was not a "buyer" under the UCC. (*Id.* at 19). Warner maintains the parties conducted business pursuant to the Warehouse Agreement, and under the oral agreement it was merely a "warehouse;" thus, a genuine issue of material fact exists regarding whether Warner was a "buyer" of the 115 bags of seed under the UCC. (*See id.* at 16–17).

Warner describes the Warehouse Agreement as a "gentleman's agreement." (*Id.* at 17; Warner App., 25). Warner offered the following evidence regarding the terms of the agreement: (1) Warner allowed Forage to store seed in its warehouse; (2) Jerry Gano, a Forage sales manager, and Wendell Howard, a former Warner employee, decided how much Forage seed to maintain in Warner's warehouse; and (3) approximately quarterly, Forage took inventory at Warner's

warehouse and invoiced Warner for any seed not present at the warehouse. (*Id.*; Warner App., 41, 45–48, 54). Under the alleged Warehouse Agreement, "Warner did not get billed for the seed until it was actually moved [from Warner's warehouse] to a customer and [Warner] did not own the seed until then either." (*Id.*; Warner App., 41, 50, 54, 70).

There are 115 bags of seed in dispute. Warner maintains it was merely warehousing the 115 bags pursuant to the Warehouse Agreement. (*See id.* at 19). According to Warner, the 69 bags of seed from Invoice No. 61877013 and the 40 bags of seed from Invoice No. 61919388, totaling 109 bags, were stolen from its warehouse by a former employee. (*Id.* at 7; Warner App., 68, 97, 146). Warner claims the six bags of seed from Invoice No. 62036322/Lot No. R145-17CGS sustained water damage while at its warehouse and that it returned the seed to Forage. (*Id.* at 6; Warner App., 97, 146). In its reply, Forage claims the 109 bags allegedly stolen were in fact sold by Warner, and also claims Warner never returned the six allegedly-damaged bags. (ECF 36 at 4–6). According to Forage, this is conclusive evidence Warner was a "buyer." Neither party cites any case law analyzing whether a party is a buyer.

The plain language of section 336.2-709 seems to require that there be a "buyer." *See* Minn. Stat. § 336.2-709(1); *see also* 24 Williston on Contracts § 66:21 (4th ed. 2019) ("The seller also bears the burden of proof as to (1) the acceptance of the goods by the buyer, (2) the price of the goods accepted, (3) the past due date of the price, and (4) the failure of the buyer to pay…."). As previously stated, "buyer" means a person who buys or contracts to buy goods. *Id.* § 336.2-103(1)(a). The Court understands Forage to argue that Warner is a "buyer" because it contracted to buy the seed by virtue of the parties' following conduct: Warner submitted purchase orders for the seed, Forage delivered the seed requested and issued an invoice to Warner, and Warner accepted the seed and never rejected it. (*See* ECF 30 at 9–12).

Forage cites one email as evidence of the purchase orders. (*See id*. at 9; Forage App., 37–39). It is unclear whether the email pertains to any of the disputed seed. For that reason, the email alone is insufficient to show Warner contracted to buy the seed. The Court recognizes neither party disputes the Credit Agreement is a contract. However, the Credit Agreement alone cannot form the contract(s) for the sale of the disputed seed because it does not describe the quantity of disputed seed, its price, or the payment due date—prerequisites for recovering under section 336.2-709. *See* Minn. Stat. § 336.2-709(1); *see also* 24 Williston on Contracts § 66:21. While other evidence in the record, such as the invoices, could potentially be pieced together with the Credit Agreement to form a contract for the sale of the seed, Forage did not make any such argument or cite any authority to support combining terms from multiple documents. Finally, unlike the evidence regarding the undisputed seed, the evidence regarding the 115 bags of disputed seed does not support a finding that a contract was formed through the parties' conduct. As discussed above, Warner offered some evidence to show it warehoused—not bought—the 115 bags of seed and never resold the seed to one of its customers. Therefore, Forage failed to satisfy its summary judgment burden to show Warner was a "buyer" with respect to the 115 disputed bags of seed and consequently failed to establish its right to late charges under the Credit Agreement as to those same bags.

C. **Forage's Claim for Late Charges under the Credit Agreement**

Forage also seeks summary judgment on its breach of contract claim for late charges under the Credit Agreement. Because the undersigned recommends the Court grant Forage's Motion for Summary Judgment only as to the 175 undisputed bags of seed, the Court will only address Forage's request for late charges under the Credit Agreement as to the 175 undisputed bags of seed. Though Warner does not dispute that it must pay for the 175 undisputed bags of seed, Warner

argues it warehoused and purchased these bags under the Warehouse Agreement, and denies it purchased them under the Credit Agreement. (ECF 33 at 24; Warner App., 36). As stated above, the Court lacks sufficient information to determine the terms of the parties' contract(s) for the sale of the seed and whether the term providing for late charges is included. The Court finds Forage failed to satisfy its summary judgment burden to show Warner breached the Credit Agreement with respect to the 175 undisputed bags of seed.

## IV. RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that Forage's Motion for Summary Judgment be GRANTED in part and DENIED in part.

## V. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED October 8, 2019.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections

with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).