U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC _ 5 2019

CLERK, U.S. DISTRICT COURT
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FORAGE GENETICS INTERNATIONAL, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § | 2:18-CV-113-Z-BR |
| WARNER SEEDS, INC., | § § § | |
| Defendant. | § | |

## ORDER

### HISTORY

On June 7, 2019, Plaintiff filed a Motion for Summary Judgment (ECF 29) and a brief in support (ECF 30). On June 28, Defendant filed a response to Plaintiff's motion (ECF 32). On July 2, Plaintiff filed a reply to Defendant's response (ECF 36). On July 5, Defendant filed a response to Plaintiff's reply (ECF 41). On October 8, the United States Magistrate Judge entered findings and conclusions on Plaintiff's motion (ECF 45). The Magistrate Judge RECOMMENDS that Plaintiff's motion be GRANTED in part and DENIED in part. On October 14, Plaintiff filed objections to the findings, conclusions, and recommendation (ECF 49). On November 4, the Court ordered additional briefing from both parties (ECF 50). On November 18, Plaintiff, pursuant to the Court's order, filed a brief in support (ECF 51). On November 25, Defendant, again pursuant to the Court's order, filed a response to Plaintiff's brief (ECT 52).

### SUMMARY

After making an independent review of the pleadings, files, and records in this case, the findings, conclusions, and recommendation of the Magistrate Judge, Plaintiff's objections, and the additional briefing ordered on November 4, the Court concludes that the findings and conclusions

are correct in part. It is therefore ORDERED that the findings, conclusions, and recommendation of the Magistrate Judge are ADOPTED in part and that Plaintiff's Motion for Summary Judgment (ECF 29) is GRANTED in its entirety. The Court provides the reasons for its order in the analysis below.

**ANALYSIS**

Plaintiff argues—and Defendant admits—that Defendant was obligated to pay Plaintiff for any seed that it resold to its customers. *See* (ECF 49 at 4) ("Warner admitted, however that it was obligated to pay Forage Genetics for any seed that it resold to its customers."); (ECF 33 at 16) ("The agreement was that Warner would only have to pay for the seed if Warner sold the seed."). Hence, Defendant is liable to Plaintiff for any bags of seed that it actually sold. Plaintiff further argues that Defendant is liable for late charges for past-due invoices under the Credit Application and Agreement ("Credit Agreement") that both parties signed. (ECF 31 at 38–39). The Court first addresses Defendant's liability for seeds sold before turning to its liability under the Credit Agreement.

*Defendant's Liability for Seeds Sold*

In her findings, conclusions, and recommendation, the Magistrate Judge found that there was no genuine issue of material fact with respect to Defendant's liability for one hundred seventy-five (175) bags of seeds involved in this lawsuit ("the undisputed bags"). (ECF 45 at 8). However, the Magistrate Judge did find that there was a genuine issue of material fact with respect to Defendant's liability for one hundred fifteen (115) bags of seed involved in this lawsuit ("the disputed bags"). (ECF 45 at 10). Therefore, this Court must determine if there is a genuine issue of material fact as to whether the disputed bags were actually *sold*. The disputed bags can be divided into three categories based on their invoice number: forty (40) bags from Invoice No.

61919388, sixty-nine (69) bags from Invoice No. 61877013, and six (6) bags from Invoice No. 62036322. (ECF 45 at 8). The Court examines each category of the disputed bags in order.

Regarding the forty (40) bags from Invoice No. 61919388, Defendant admitted in a supplemental response that it had resold the forty (40) bags. (ECF 42 at 2). Since these forty (40) bags were resold by Defendant, the Court FINDS that Defendant is liable for the forty (40) bags from Invoice No. 61919388.

Regarding the sixty-nine (69) bags from Invoice No. 61877013, Plaintiff argues that Defendant sold these bags as well. Plaintiff argues that because (1) those bags were not from the lot in which any theft was known to have occurred and (2) Defendant no longer possesses the bags, Defendant therefore must have sold them. (ECF 51 at 2). Plaintiff also argues that Defendant informed Plaintiff that (1) Defendant had sold the sixty-nine (69) bags and (2) they were to be excluded from a related credit and rebill transaction because they had been sold. *Id.* at 2–3. Plaintiff further argues that this is consistent with the sales indicated by Defendant's invoices. *Id.* at 3.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute—or issue—of material fact exists if the evidence is such that a reasonable trier of fact could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and will not defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1449 (5th Cir. 1993)).

Here, there is no genuine issue of material fact as to whether Defendant sold the sixty-nine (69) bags from Invoice No. 61877013 to its customers. Despite Defendant's claims to the contrary, no reasonable jury could find that Defendant did not sell the sixty-nine (69) bags. Indeed, in its most recent briefing responding to Plaintiff, Defendant does not even provide a plausible alternative scenario regarding what happened to the bags. Defendant provides no evidence that its former employee—John David Cass—stole from the lot where the sixty-nine (69) bags were kept, and it merely asserts that "[t]he extent of the Cass theft may not ever be fully known." (ECF 52 at 2). This is precisely the sort of unsupported speculation that will not defeat a motion for summary judgment. Consequently, the Court FINDS that Defendant is liable for the sixty-nine (69) bags from Invoice No. 61877013.

Regarding the six (6) bags from Invoice No. 62036322, Plaintiff argues that Defendant is liable for them under any theory of liability. Plaintiff in particular argues that Defendant is liable even under Defendant's own warehouse theory. (ECF 51 at 8). This is because Defendant alone is responsible for the damage to the bags that prevented their delivery to a customer. *Id.* Defendant does not address this argument in its response to Plaintiff. Additionally, the Court notes that there is evidence in one of the depositions that the bags were *in fact* sold to a customer even though they presumably had not yet been delivered. (ECF 31 at 298). This would mean that Defendant is liable for those bags as well since they were sold. In summary, the deposition reflects that the six (6) bags were indeed "sold" though they presumably were never delivered for reasons irrelevant to liability—specifically, water damage to the bags that occurred while in Defendant's possession. The Court FINDS that each of the aforementioned reasons *individually* suffices to render Defendant liable for the six (6) bags from Invoice No. 62036322.

Consequently, the Court FINDS that Defendant is liable for all of the disputed bags.

*Defendant's Liability under the Credit Agreement*

Having established Defendant's liability for the disputed bags, the Court now turns to the question of Defendant's liability for late charges under the Credit Agreement. The relevant portion of the Credit Agreement states the following, where Defendant is "Applicant":

> Applicant agrees to pay all invoices, including sales tax, where applicable within the terms stated on each invoice or prior to due date to keep account balance within credit limit. . . . Payments not made by Applicant within terms will incur a late charge after the date due calculated at a rate equal to the lesser of 18% per annum, or the highest rate allowed by applicable law.

(ECF 31 at 38).

Defendant does not dispute the existence of the Credit Agreement. (ECF 33 at 11). However, Defendant argues that there is "a conflict in testimony on whether the credit document applies to the transactions forming the basis of this lawsuit that requires resolution by a jury, not by a court on motion for summary judgment." *Id.* The testimony that Defendant refers to is a statement by its Chief Financial Officer Peter Scariati ("Scariati") in a deposition. *Id.* When asked about the Credit Agreement, Scariati stated that "we never operated – or a minimal amount of our relationship was operated that way. Most of it was a warehousing agreement." (ECF 34 at 42).

In response, Plaintiff argues that even if Scariati were correct, Defendant would still be liable for the late charges under the Credit Agreement for the disputed bags as well as the undisputed bags. (ECF 36 at 13). This is because Defendant failed to timely pay invoices for the bags that it ended up selling—which includes both the disputed and undisputed bags. *Id.*

The Court agrees with Plaintiff. There is nothing in the portion of the Credit Agreement quoted above that restricts its applicability to certain kinds of purchases. Indeed, nothing in the Credit Agreement is contingent upon the way that the underlying purchase was contracted, be it

5

through a warehouse agreement or otherwise. Once an invoice has been made and Defendant is liable to Plaintiff, the Credit Agreement simply applies.

It also cannot be objected that the Credit Agreement does not contain specific descriptions of the quantity of, price of, and payment due date for the disputed and undisputed bags. While the absence of these descriptions might preclude the Credit Agreement from forming a contract for the purchase of the bags, it does not preclude the Credit Agreement from applying to purchases *that have already been contracted*. The Court has found that Defendant has already contracted to purchases from Plaintiff for the disputed and undisputed bags. Consequently, there is no reason why the Credit Agreement should not apply to these purchases.

Accordingly, the Court FINDS that Defendant is liable for late charges under the Credit Agreement. The Court therefore ORDERS Plaintiff to file additional briefing **no later than Monday, December 9, 2019**, that (1) states the daily rate for the late charges, the late charges owed by Defendant as of the date of this Order, and the relevant timeframe that the Court should consider for any further late charges and (2) explains with specificity how the values in (1) were calculated. The Court further ORDERS Defendant to file a response to Plaintiff's additional briefing **no later than Wednesday, December 11, 2019**. Both Plaintiff's additional briefing and Defendant's response are to be **no longer than five (5) pages each**. If both parties agree to the daily rate for the late charges, the late charges owed by Defendant as of the date of this Order, and the relevant timeframe that the Court should consider for any further late charges, they may file a Joint Status Report **no later than Wednesday, December 11, 2019**.

### Conclusion

Accordingly, this Court ADOPTS in part the findings, conclusions, and recommendation of the Magistrate Judge, and it ORDERS that Plaintiff's Motion for Summary Judgment is

6

GRANTED in its entirety. The Court further ORDERS additional briefing from both parties as described—and subject to the conditions—above.

**SO ORDERED.**

December 5, 2019.

                                            MATTHEW J. KACSMARYK
                                            UNITED STATES DISTRICT JUDGE